## No. 9372.

ATCHESON, TOPEKA & SANTA FE RAILWAY COMPANY *v.* COLORADO ALFALFA MILL & POWER COMPANY.

1. CONTRACTS—*Custom or Usage,* may modify the terms of a contract.

2. *Burden of Proof.* Action by Shipper against a railway company for the destruction by fire of goods alleged to have been delivered to the railway company. The bill of lading was in terms which excluded a recovery, but the shipper relied upon a usage modifying the contract. Held the burden was upon him to establish this usage, and the limits thereof.

Plaintiff operated a mill at a station of defendant, where there was no agent. The bill of lading provided that property taken from a station where there was no regularly appointed agent "shall be at owner's risk until attached to a train." The car in question was not so attached, but plaintiff relied on the course of dealing with the railway company as modifying the contract. The evidence showed that "no car was ever received from plaintiff at that station, until notice by telephone to the agent at an adjoining station, or to a train crew, that the car was ready for shipment, or until the bill of lading had been signed, and a copy thereof had passed the hands of the train conductor. Held that these matters were all an essential part of the usage, in order to effect a modification of the bill of lading, and there being no evidence of compliance therewith the car in question was, at the time of the fire, still in possession of plaintiff and defendant was not liable.

*Department One.*

*Error to Otero District Court, Hon. J. E. Rizer, Judge.*

Mr. HENRY T. ROGERS, Mr. GEORGE A. H. FRASER and Mr. C. C. HEARNSBERGER, for plaintiff in error.

Messrs. SABIN, HASKINS & SABIN, for defendant in error.

Burke, J.

DEFENDANT in error was plaintiff and plaintiff in error was defendant in the District Court, and they are hereinafter so designated.

Plaintiff had an alfalfa meal mill at Roberta, Colorado, and for some months had made shipments therefrom over defendant's railway. These shipments amounted generally to one or two cars daily, though sometimes as many as four cars were shipped, and occasionally, for several days, none at all. Roberta is about three miles from Swink, and both

stations are on defendant's railway. An agent is employed at Swink but none at Roberta. Roberta is on a branch line, and shipments to and from that point are handled by the agent at Swink. In the early course of this business cars were loaded and moved to Swink, where bills of lading were made out and delivered. The bills used contained the following provision:

"Property destined to or taken from a station, wharf or landing at which there is no regularly appointed agent shall be entirely at risk of owner after unloaded from cars or vessels, or until loaded into cars or vessels, and when received from or delivered on private or other sidings, wharves or landings shall be at owners' risk until the cars are attached to and after they are detached from trains."

Saturday, January 30, 1915, two empty cars were placed on the siding adjacent to the mill; one of these was loaded by plaintiff and removed by defendant. Plaintiff finished loading the other about 5:30 P. M., at a time when the local train should have been supposed to have returned to Swink for the day. No train was operated on the branch on Sunday. No notice of any kind was given defendant that the car was ready for shipment. During the night following this car of meal was destroyed by fire of unknown origin. Plaintiff brought suit to recover the value thereof, $239.40. Jury was waived and upon trial to the court plaintiff obtained judgment. From that judgment defendant prosecutes this writ. Plaintiff contends that at the time of the destruction of the meal in question it had been delivered to and was in the possession of the Railway Company. Defendant maintains the contrary. This is the sole question necessary for our determination.

Mr. Justice Burke delivered the opinion of the court.

Such was the proven character of the track upon which the car stood at the time of the fire that, were the contract between the parties solely evidenced by the bill of lading, plaintiff could not recover. Such contract however may be altered by custom and usage.

*M. & E. Ry. Co. v. Kalb,* 73 Atl. 396, 49 Am. Rep. 54.

That it had been so altered in the present case is admitted. The burden of proving the extent of that modification devolved upon plaintiff. It must prove what custom and usage had been adopted by the parties as constituting delivery in lieu of the attachment of the cars to defendant's train.    In response to this requirement plaintiff produced evidence that:

1.    The defendant, by its agent at Swink, ·delivered to G. I. Boyd, plaintiff's assistant manager, blank bills of lading, a seal book and car seals.

2.    Defendant, when required by plaintiff, placed empty cars for its use upon the siding in question.

3.    When loaded by plaintiff its agents sealed the cars, made a record in the book mentioned and filled out a bill of lading, except the signature by defendant.

4.    Cars so. loaded, sealed, recorded and billed were removed by the Railway Company, either upon notice by telephone to the agent at Swink, or when so found by the Railway Company's train crews.

5.    When so removed such crews first learned from plaintiff's agents that the cars were ready for shipment, bill of lading was presented to the conductor who signed same for defendant and delivered copy thereof to its agent at Swink.

It affirmatively appears from the evidence that no car was ever removed from this siding until notice by telephone to the agent at Swink that the car was loaded and ready, or until such notice was given orally to the train crews by plaintiff's agents, or until bill of lading had been signed and copy thereof passed into the hands of defendant's agent, the conductor. Such notice and signing of bill of lading were an essential part of the custom and usage constituting the contract, or supplanting that portion of the contract requiring the attachment of the cars to defendant's train to constitute delivery. Delivery and acceptance

were essential to impose upon the Railway Company the duties and obligations of a common carrier.

Hutchison, Carriers, 3rd Edition, Vol. 1, Sec. 105.

There is no proof thereof as to the car in question, hence a fatal defect in the evidence of delivery. In addition to this there is no evidence of any notice to the company that more than the car already loaded and taken would be ready for shipment on the 30th. The car in question was loaded and sealed after the local had gone. No crew would be where it could reasonably be expected to learn of the loading of this car until the following Monday. There was no actual delivery and acceptance of the car in question, nothing which could be construed, either under the law, or the bill of lading, or the established custom and usage, as such delivery and acceptance. At the time of the fire the car was therefore in possession of plaintiff and the judgment is accordingly reversed with directions to the court below to enter judgment herein for defendant.

Garrigues, C. J. and Teller, J., concur.